DAVID M. LUCIANO, Plaintiff-Appellant, v. WAUBONSEE COMMUNITY COLLEGE, Defendant (Tammy Abell, Indiv. and as Agent for Waubonsee Community College, Defendant-Appellee).

Second District   No. 2—92—1095

Opinion filed June 3, 1993.

David M. Luciano, of Aurora, appellant *pro se.*

Gary K. Mickey, Steven A. Andersson, and Bernard K. Weiler, all of Mickey, Wilson, Weiler & Renzi, P.C., of Aurora, for appellee Tammy Abell.

William C. Murphy, of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for Waubonsee Community College.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, David M. Luciano, filed a 12-count complaint in the circuit court of Kane County against defendants, Waubonsee Community College and Tammy Abell, alleging malicious prosecution, false imprisonment and negligence. Following a dismissal with prejudice of the six counts directed to Waubonsee and a dismissal with leave to amend the remaining six counts against Tammy Abell, plaintiff filed an amended six-count complaint solely against Abell alleging malicious prosecution, false imprisonment and negligence. Following a subsequent dismissal with prejudice of plaintiff's amended complaint, vacatur of the dismissal and reinstatement of his complaint, and withdrawal of counsel, plaintiff, *pro se*, among other things, responded to Abell's section 2—619 motion to dismiss (see Ill. Rev. Stat. 1991, ch. 110, par. 2—619) and moved for leave to file a second amended complaint. Plaintiff appeals from the order of the circuit court granting Abell's motion to dismiss plaintiff's amended complaint with prejudice and denying plaintiff leave to file a second amended complaint.

Plaintiff raises the following issues on appeal: (1) whether the trial court erred in its determination that Abell's employer, Waubonsee, a community college, was a "local public entity" under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 8—101); (2) whether a question of fact was raised as to Abell's status as an employee of Waubonsee; (3) whether plaintiff's allegations of wilful and wanton conduct precluded Abell's availing herself of the more restrictive statute of limitations in the Tort Immunity Act; (4) whether plaintiff raised questions of fact as to the applicability of the statute of limitations period in the Tort Immunity Act; (5) whether the trial court erred in denying plaintiff's motion for leave to amend his complaint; and (6) whether the trial court was prejudiced against plaintiff because of his *pro se* status.

Taking only well-pleaded facts as true for the purposes of a section 2—619 motion to dismiss (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 545), plaintiff's amended complaint alleged the following salient facts. On or about October 28, 1989, plaintiff was a guest of Waubonsee on its campus located in Sugar Grove, Illinois. On that date, plaintiff was arrested by Abell, detained in a jail cell for an "extended period of time," and charged with criminal battery and trespass. Plaintiff alleged that he was not guilty of the charges. The complaint further alleged that plaintiff was ordered by Abell to leave the premises for no reason, and as he attempted to

leave the grounds of the college on his motorcycle, Abell struck plaintiff and his motorcycle with a motor vehicle causing personal injury and property damage.

As a result of the criminal charges, defendant appeared in the circuit court of Kane County. On or about January 31, 1990, the charges were dismissed. Tammy Abell failed to appear in court on three separate occasions.

On October 25, 1991, plaintiff filed a 12-count complaint against Waubonsee Community College and Tammy Abell, individually and as agent for Waubonsee Community College. The complaint alleged essentially three theories of recovery: malicious prosecution, false imprisonment and negligence. Waubonsee and Abell both filed section 2—619 motions to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—619) asserting that Abell was an employee of a local public entity and based upon a filing date of October 25, 1991, which was more than one year following the date of injury, October 28, 1989, plaintiff's action was time barred under section 8—101 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 8—101). The first six counts directed against Waubonsee were dismissed with prejudice. The remaining counts directed against Abell were dismissed on the grounds that they were time barred under the Tort Immunity Act. Plaintiff was allowed leave to amend his complaint as against Abell.

In his amended complaint directed solely against Abell, plaintiff set forth essentially identical allegations as in his original complaint and sought recovery on the same three theories: malicious prosecution, false imprisonment and negligence. Abell again filed a section 2—619 motion to dismiss asserting that plaintiff's amended complaint was time barred under section 8—101 of the Tort Immunity Act. Attached to Abell's motion to dismiss was an affidavit which recited the following facts. On October 28, 1988, Abell was employed by the college as a police cadet, and at the time alleged in plaintiff's complaint she was in uniform and on duty. At the time of the alleged incident, the college was closed. Abell encountered plaintiff inside one of the closed campus buildings. She informed plaintiff that the campus was closed and that he should leave. After returning to her car, Abell called the Sugar Grove police and arranged to meet them at the front of the campus. Subsequently, plaintiff pulled Abell from her vehicle and attacked her. Shortly thereafter, the Sugar Grove police arrived. Abell further averred that all of her actions were in the course of her employment and performed pursuant to her duties as a police cadet for the college.

Shortly following the filing of defendant's motion to dismiss, plaintiff, acting *pro se*, caused to be issued three subpoenas *duces tecum* directed to the Kane County State's Attorney and two officials of Waubonsee. The subpoena directed to the State's Attorney requested various documents and notes related to plaintiff's arrest; the subpoenas directed to the college officials requested documents pertaining to the college's policies and procedures with respect to the hiring and retention of police cadets, the names and titles of persons having knowledge of the incident on October 28, information about the hiring, retention, training and work history of Abell, and any information she may have reported to the college about the October 28 incident. Plaintiff further requested documents containing rules and procedures regarding the operation of the college premises; records of arrests and civil filings related to false arrest, false imprisonment, malicious prosecution or abuse of process; and the policies and procedures employed where an employee obtains employment by fraudulent means.

Abell subsequently filed a motion to quash the subpoenas directed to the college officials. The motion was noticed up for May 28, 1992. Contained in the record is an order of the circuit court dated May 28, 1993, which purports, however, to dismiss with prejudice plaintiff's amended complaint for failure to file his complaint within the time period allowed under the Tort Immunity Act. The order further stated that plaintiff appeared, but plaintiff's counsel was absent from the hearing. The order made no mention of the motion to quash.

Approximately 12 days later, plaintiff's attorney filed a motion to vacate the order of dismissal, alleging inadvertent error. Plaintiff's attorney also filed a motion to withdraw as counsel at the request of plaintiff. The trial court granted the motion to vacate and reinstated plaintiff's amended complaint. The court further granted counsel's motion to withdraw.

Plaintiff, now proceeding *pro se*, filed a response to Abell's motion to dismiss and a separate response to the motion to quash the subpoenas. In addition, plaintiff filed a motion for leave to file a second amended complaint. Plaintiff attached no proposed amendment or affidavit establishing additional factual matters.

In his response to Abell's motion to dismiss, plaintiff contended that his cause of action against Abell was not time barred under the Tort Immunity Act because the college was not a "local public entity" and that Abell's conduct was wilful and wanton thus depriving her of immunity under the Tort Immunity Act. Plaintiff's response also sought to refute the averments of Abell's affidavit which was at-

tached to her motion to dismiss. In support of his response, plaintiff asserted that the police reports, photographs and Abell's statement to police and an unnamed witness would corroborate his factual refutations. Attached to his response was an affidavit wherein plaintiff averred that he "believed" Abell falsified documents in conjunction with obtaining her position as a student cadet, that information contained in the State's Attorney's office will contradict Abell's affidavit, that information requested in the subpoenas directed to the college officials would also corroborate additional torts he wished to allege in a second amended complaint, that he had not yet acquired access to the required information, and that "due to unrelated circumstances" he was unable to attach any exhibits.

Following a hearing, the trial court granted Abell's motion to dismiss with prejudice and denied plaintiff's motion for leave to file a second amended complaint. The trial court determined that it was uncontroverted that Abell was an employee on duty at the college at the time of the occurrence giving rise to the complaint. The court further determined that the college was a local public entity within the Tort Immunity Act. Consequently, Abell's activity was within the purview of the Tort Immunity Act, and, as such, plaintiff's cause of action was time barred under section 8—101. The court further held that because plaintiff failed to present a proposed second amended complaint and there was no indication that the defect could be cured by subsequent amendment, plaintiff's motion for leave to file a second amended complaint was denied. Plaintiff then filed this timely appeal.

The first issue raised on appeal is whether Waubonsee was a "local public entity," within the definitional dictates of the Tort Immunity Act. As defined at the time of the occurrence leading to plaintiff's filing his lawsuit, section 1—206 of the Tort Immunity Act provided, in relevant part:

"§1—206. 'Local Public Entity' includes a county, township, municipality, municipal corporation, school district, school board, forest preserve district, park district, fire protection district, sanitary district, and *all other local governmental bodies*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 85, par. 1—206.)

Section 1—206 was subsequently amended by Public Act 86—292, effective January 1, 1990, expressly to include community college districts and college boards within the definition of local public entity. (See Ill. Rev. Stat. 1989, ch. 85, par. 1—206.) Plaintiff contends that the failure expressly to include "community college district and community college board" within section 1—206, as it read on the date of

the occurrence (October 28, 1989), demonstrates that Waubonsee was not a local public entity within the dictates of the Tort Immunity Act. Abell advances the dispositive argument that Waubonsee, as a community college, was a local governmental body within the statutory definition as it existed in 1989.

Illinois courts have long recognized that various public entities, although not expressly identified in the statute, are within the definition of "local public entity." See, e.g., *Grady v. Bi-State Development Agency* (1986), 151 Ill. App. 3d 748, 750 (interstate governmental agency); *LeSanche v. North Suburban Mass Transit District* (1985), 142 Ill. App. 3d 394, 395 (mass transit agency); *Sappington v. Sparta Municipal Hospital District* (1969), 106 Ill. App. 2d 255, 256-57 (hospital district).

■ A review of the statute governing the operation of entities like Waubonsee reveals, in part, that community college districts are created by petitioning the State Board to call for an election for the purpose of voting for or against the establishment of a community college district. (Ill. Rev. Stat. 1989, ch. 122, par. 103—1.) The board of trustees is publicly elected in accordance with the general election laws of the State (Ill. Rev. Stat. 1989, ch. 122, pars. 103—7), and the district board of trustees is expressly determined to be a body politic and corporate (Ill. Rev. Stat. 1989, ch. 122, par. 103—11). With respect to finances, the costs of referenda are supported by public funds (Ill. Rev. Stat. 1989, ch. 122, par. 103—4.1), and the board, with the consent of the city council, may incur indebtedness and float bond issues for the purpose of establishing a cash working fund (Ill. Rev. Stat. 1989, ch. 122, par. 103—33.2). Additionally, each district is empowered to levy taxes to meet debt obligations (Ill. Rev. Stat. 1991, ch. 122, par. 103—33.4) and for the operation and maintenance of facilities (Ill. Rev. Stat. 1989, ch. 122, par. 103—14).

Where a particular entity, such as Waubonsee, must petition another public entity to hold public elections as a necessary antecedent to its creation, requires public elections of its governing board of trustees and is financed by taxes and other public funds, we are inexorably led to the conclusion that Waubonsee was an "other governmental body" within the definition of local public entity as recited in the earlier version of the statute. Moreover, we are unpersuaded by plaintiff's argument that the decision not to designate expressly such an entity in the previous version evinces the legislature's intent to exclude community colleges from the meaning of local public entity. If we were to accept this contention, it would render the phrase "other governmental body" meaningless. Whenever possible, every word,

clause and section of a statute should be attributed some reasonable meaning, and an interpretation that renders any part of the statute superfluous must be avoided. (*Roser v. Anderson* (1991), 222 Ill. App. 3d 1071, 1075.) Accordingly, we hold that Waubonsee was properly determined to be a local public entity within the dictates of the Tort Immunity Act.

■ The next issue raised is whether the statute of limitations in section 8—101 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 8—101) barred plaintiff's cause of action against Abell. Plaintiff contends that (1) because Abell was employed by fraudulent means, a question of fact existed as to her status as an employee of Waubonsee; (2) his allegations of wilful and wanton conduct removed his claim from application of section 8—101; and (3) the trial court erred in granting defendant's motion to dismiss because it did not appear that defendant's statute of limitations defense was unequivocally well founded.

A review of plaintiff's amended complaint reveals that he did not allege that Abell was an employee of Waubonsee at the time of the alleged incident giving rise to his cause of action. In an affidavit attached to her section 2—619 motion to dismiss, Abell averred that on October 28, 1989, she was employed by Waubonsee Community College and at the time of the incident alleged in plaintiff's complaint, she was in uniform working her shift as a cadet on college property. In an affidavit attached to his response to Abell's motion to dismiss, plaintiff stated he "believed" Abell falsified documents to obtain her position at Waubonsee and that documents that he had not yet obtained pursuant to his earlier subpoena *duces tecum* would contradict Abell's affidavit and establish additional torts he wished to allege in a second amended complaint.

Well-alleged facts within an affidavit must be taken as true when they are not contradicted by counteraffidavits. (*Lamkin v. Towner* (1990), 138 Ill. 2d 510, 532.) Supreme Court Rule 191 requires that affidavits must be made on personal knowledge, set forth with particularity the facts upon which the claim, counterclaim or defense is based, and shall not consist of conclusions but of facts admissible in evidence. (134 Ill. 2d R. 191.) As a logical consequence of these two rules, it follows that where the averments made in a plaintiff's affidavit are premised upon information and belief, they are insufficient as against positive averments of facts made in an opposing defendant's affidavit. *Cf. Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 741 (affidavit filed in support of complaint based on information and

belief insufficient as against defendant's uncontradicted affidavit filed in conjunction with section 2—619 motion to dismiss).

Plaintiff's affidavit, which was premised solely on a belief as to the circumstances surrounding Abell's employment and conjecture as to information he hoped to retrieve from the Kane County State's Attorney and the college officials, was insufficient to rebut the positive averments of facts contained within Abell's affidavit. Taking the uncontradicted averments of positive facts in Abell's affidavit as true, we conclude that no question of fact existed as to Abell's status as an employee at the time of the alleged incident. Furthermore, we note parenthetically that even if Abell had obtained employment by fraudulent means, it would not have changed the fact of her employment at the time of the alleged incident.

Having determined that Abell was an employee of a local public entity within the definition of the Tort Immunity Act, the pivotal consideration becomes whether plaintiff's allegations of wilful and wanton conduct deprived Abell of the benefit of the more restrictive statute of limitations period contained within the Tort Immunity Act. Section 8—101 provides:

"§8—101. No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For the purposes of this Article, the term 'civil action' includes *any* action, whether based upon the common law or statutes or Constitution of this State." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 85, par. 8—101.

In *Panko v. County of Cook* (1976), 42 Ill. App. 3d 912, a battery action brought against a county and two of its employees, the court rejected plaintiff's contention that the notice requirements contained in sections 8—102 (Ill. Rev. Stat. 1971, ch. 85, pars. 8—102 (repealed by Pub. Act 84—1431, art. I, §3, eff. November 25, 1986)) and 8—103 (Ill. Rev. Stat. 1971, ch. 85, par. 8—103) of the Tort Immunity Act were solely applicable to accidental injuries. The court determined that the definition of the word "injury," as referred to in those sections, did not solely relegate their applicability to accidental encounters but were instead to be applied to any tortious injury to a person or property. *Panko*, 42 Ill. App. 3d at 916-17.

In *Johnson v. King* (1977), 55 Ill. App. 3d 336, the plaintiffs alleged that the defendant police officers forced their way into their home and maliciously, wilfully and wantonly beat plaintiffs. On appeal, the court rejected plaintiffs' contention that the notice provisions of

the Tort Immunity Act did not apply to persons charged with wilful and wanton conduct. The court reasoned that there was a distinction between the proof requirements and notice requirements of the Tort Immunity Act and that the purpose of the notice provisions was to promote early investigation and prompt settlement of claims. The court further observed that the notice requirements aided governmental entities in the determination of budgets and encouraged early investigation at a time when witnesses were more readily available and conditions had not materially changed.

Although *Panko* and *Johnson* did not address the identical statutory provision in question here, we nevertheless find those decisions persuasive in reaching the conclusion that allegations of wilful and wanton conduct do not deprive a local public entity and its employees of the benefit of the shorter limitations period provided in section 8—101. Our supreme court has expressly recognized that the policy concerns underlying the notice provisions of the Tort Immunity Act are identical to those implicit in section 8—101. (See *Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 292.) Moreover, the policy concerns expressed in *Johnson, Panko* and *Saragusa* are consistent with the basic policies underlying statutes of limitation generally, which are to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible (*Segal v. Sacco* (1990), 136 Ill. 2d 282, 286) and to discourage delay in bringing available claims (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132).

Plaintiff's amended complaint alleged that the incident giving rise to his action occurred on October 28, 1989, and that on January 31, 1990, the criminal charges filed against him were dismissed. Plaintiff filed his original complaint against Waubonsee and Abell on October 25, 1991, approximately two years after the accrual of his causes of action for negligence and false imprisonment (see generally *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171) and approximately 1³/₄ years after his cause of action for malicious prosecution accrued (see *Stanger v. Felix* (1981), 97 Ill. App. 3d 585, 586-87). Taking plaintiff's allegations as true and applying section 8—101, we conclude that the trial court correctly ruled that plaintiff's action against Abell was time barred because his action was instituted after the expiration of the one-year statutory filing requirement. (See Ill. Rev. Stat. 1989, ch. 85, par. 8—101.) Moreover, based upon the foregoing, we find no merit to plaintiff's argument that the trial court erred because it was not apparent that defendant's section 8—101 defense was unequivo-

cally well founded. To the contrary, defendant's statute of limitations defense was well founded on existing precedent and statutes.

Plaintiff next contends that the trial court erred in denying his motion for leave to amend his complaint. Abell responds that the trial court did not abuse its discretion where plaintiff failed to proffer a proposed amendment that would cure his defective pleading.

Although courts in Illinois are encouraged to freely and liberally allow the amendment of pleadings (*Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, 467), the right to amend is not absolute and unlimited (*Lee*, 152 Ill. 2d at 467). It remains within the sound discretion of the trial court whether to grant leave to amend, and absent an abuse of that discretion, its decision will not be disturbed on review. (*Lee*, 152 Ill. 2d at 467.) In determining whether the trial court abused its discretion, a reviewing court should consider (1) whether the proposed amendment would cure the defective pleading; (2) whether the other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273.

■ At the hearing to vacate the trial court's earlier dismissal of plaintiff's complaint and plaintiff's counsel's motion to withdraw, plaintiff was expressly admonished concerning the risks of proceeding *pro se* and that the court would require plaintiff to adhere to the applicable rules of law and evidence. At the hearing on Abell's motion to dismiss, the trial court questioned plaintiff about his adding a motion to amend his complaint to his response to Abell's motion to dismiss. The gist of plaintiff's answer was that he thought it more efficient, if he could bring up the issue of amendment at the same time. The trial court again reminded plaintiff of its earlier admonishment and explained to plaintiff that it was necessary to provide formal notice of his motion to opposing counsel and that he should have attached a copy of the proposed amendment to his motion for leave to amend. Nevertheless, the trial court allowed plaintiff orally to explain the basis of his proposed amendment. Plaintiff indicated that he wished to add additional counts: "abusive" process and malicious prosecution. He further indicated that he wanted to "make sure" that he alleged all the facts connected with the alleged incident.

We find no abuse of discretion. Plaintiff did not tender to the trial court a copy of his proposed amendment after being admonished by the trial court of the risks inherent in self-representation, and there is nothing in plaintiff's oral explanations at the hearing on Abell's mo-

tion to suggest that any amendment would have cured the fundamental defect in his claim. Moreover, plaintiff's suggestion in his brief that the possibility of a section 1983 action (see 42 U.S.C. §1983 (1992)) would have allowed him to amend his complaint to state a cause of action was never raised before the trial court. Accordingly, that argument is waived on appeal. 134 Ill. 2d R. 341(e)(7).

■ Finally, plaintiff contends that the trial court was prejudiced against him for having assumed his own representation. In light of plaintiff's failure to move to substitute judges on the basis of prejudice, the trial court's express admonishment of plaintiff as to the risks inherent in self-representation, the trial court's willingness to hear plaintiff's reasons for requesting leave to amend in the absence of compliance with procedural formalities, and the lack of any support in the record to substantiate a claim of judicial prejudice, we find this contention completely without merit.

For the foregoing reasons, we affirm the order of the circuit court of Kane County dismissing with prejudice plaintiff's amended complaint and denying his motion for leave to amend.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.